UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20104-CR-BECERRA(s)(s)(s)(s)(s)(s)
18 U.S.C. § 2339A(a)
18 U.S.C. § 956(a)(1)
18 U.S.C. § 371
18 U.S.C. § 960
50 U.S.C. § 4819
18 U.S.C. § 554
13 U.S.C. § 305
18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 981(a)(1)(G)

FILED BY JP D.C.
Aug 27, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

v.

CHRISTIAN EMMANUEL SANON,
a/k/a "Kumbe,"
a/k/a "Pumba,"
a/k/a "Bubba,"
a/k/a "Mr. President,"
a/k/a "P,"
BYRON SHERROD RAINER,
a/k/a "B. Ellis Rains,"
a/k/a "Byron Rain,"
a/k/a "Byron Ellis,"
JOSEPH FELIX BADIO,
a/k/a "Cousin,"
VITEL'HOMME INNOCENT,
CARLOS GIOVANNI GUERRERO TORRES,
a/k/a "Don Francisco,"
VICTOR ALBEIRO PINEDA CARDONA,
a/k/a "Pipe,"
JUAN CARLOS YEPES CLAVIJO,
a/k/a "Woker,"
NAISER FRANCO CASTANEDA,
a/k/a "Esneider,"
ANGEL MARIO YARCE SIERRA,
JHEYNER ALBERTO CARMONA FLORES,
a/k/a "Joseph,"
EDWIN ENRIQUE BLANQUICET RODRIGUEZ,

**a/k/a "Daniel,"**
**MANUEL ANTONIO GROSSO GUARIN,**
**a/k/a "Mauricio,"**
**JHON JAIRO RAMIREZ GOMEZ,**
**a/k/a "Danny,"**
**FRANCISCO ELADIO URIBE OCHOA,**
**a/k/a "Cristian,"**
**ALEJANDRO GIRALDO ZAPATA,**
**a/k/a "Alexander,"**
**NEIL CACERES DURAN,**
**a/k/a "Anderson,"**
**JHON JADER ANDELA,**
**ENALBER VARGAS GOMEZ,**
**a/k/a "Victor,"**
**JOHN JAIRO SUAREZ ALEGRIA,**
**a/k/a "Angel,"**
**GERSAIN MENDIVELSO JAIMES,**
**ALEX MIYER PEÑA,**
**a/k/a "Holman,"**
[redacted]
**SAMIR HANDAL,**
**ASHKARD PIERRE,**
[redacted]
**JAMEELA AMMARA SIMMONS,**
**MARCEL WILLIAMSON, and**
**TRAVIS BARRETT NAVE,**

**Defendants.**

---

## SIXTH SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Sixth Superseding Indictment:

### The Republic of Haiti

1. The Republic of Haiti was a friendly foreign nation with whom the United States

was at peace.

2. Jovenel Moïse was the President of Haiti ("President Moïse"), lawfully recognized as such by the United States, and whose term in office was set to expire on or about February 7, 2022.



3. On July 7, 2021, President Moïse was assassinated by Colombia mercenaries, posing as law enforcement agents with the U.S. Drug Enforcement Administration ("DEA"), at his personal residence in Port-au-Prince, Haiti.






## Relevant Terms

4. "Coup d'état" was the violent overthrow or alteration of an existing government by a small group.








5. "Colombian mercenaries" were individuals motivated to take part in a coup d'état and armed hostilities in Haiti by the desire for private gain and who were not sent by any nation or state on official duty as members of its law enforcement or armed forces.





The Coronavirus Aid, Relief, and Economic Security Act

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. In addition to traditional Small Business Administration ("SBA") funding programs, the CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak, which was declared a nationwide disaster by the President of the United States on March 13, 2020.

The Paycheck Protection Program

7. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the

program rules and make certain affirmative certifications in order to be eligible to obtain the loan. In the PPP loan application, the small business (through its authorized representative) was required to provide, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

9. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

<u>The Economic Injury Disaster Loan Program</u>

11. Another source of relief provided by the CARES Act were Economic Injury Disaster Loans ("EIDL") to business owners negatively affected by the COVID-19 pandemic. Applicants applied for EIDL directly through the SBA, which reviewed the information and dispersed the funds to the applicants without an intermediary financial institution.

12. Using the SBA online portal, a business was required to submit an EIDL application to the SBA and provide information in support of each EIDL application about its operations, such

as the number of employees, gross revenues, and the cost of goods sold for the 12-month period preceding January 31, 2020. Applicants were not required to provide supporting documentation with EIDL applications but were required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge. All applications submitted on July 11, 2020 or after were handled by an SBA contractor with servers located in Des Moines, Iowa. Prior to July 11, 2020, EIDL applications were submitted through three different servers, which were located in: Boydton, Virginia; West Des Moines, Iowa; or Quincy, Washington.

13. EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor. The amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the SBA.

14. Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications. The disbursement of the EIDL funds were transmitted by the Financial Management System ("FMS") to the Treasury and then to the recipient's bank account. The primary server for the FMS is in Sterling, Virginia. Upon approval of an application for an EIDL or cash advance grant, the SBA would disburse the funds.

15. "PPP and EIDL brokers" were individuals that assisted borrowers in fraudulently obtaining and using PPP and EIDL loan proceeds and engaged in financial transactions utilizing financial institutions, in exchange for monetary compensation and to promote specified unlawful activity, with the proceeds of specified unlawful activity.

16. "PPP and EIDL borrowers" were individuals that fraudulently obtained and used PPP and EIDL loan proceeds and accepted, deposited, and transferred proceeds of special unlawful

activity through accounts at financial institutions throughout the United States at the direction of PPP and EIDL brokers and others.

**Relevant Entities**

17. Counter Terrorist Unit Federal Academy LLC ("CTU FA") was a company in the State of Florida, incorporated on or about October 1, 2019, with its listed address located in Doral, Florida. CTU FA purported to operate as a protection and security company, with alleged "extensive experience in military and law enforcement special operations in Iraq, Afghanistan, the Middle East, Africa, the Gulf of Aden, Bolivia, Ecuador, Peru and Colombia."

COUNTER TERRORIST UNIT
FEDERAL ACADEMY
MIAMI




18. CTU Security LLC ("CTU Security") was a company in the State of Florida, incorporated on or about March 21, 2008, with listed addresses located in Doral, Florida, and Miami, Florida. Along with CTU FA, CTU Security (hereinafter collectively "the CTU companies") purported to operate as a personal protection and security company, with alleged

"extensive experience in military and law enforcement special operations in Iraq, Afghanistan, the Middle East, Africa, the Gulf of Aden, Bolivia, Ecuador, Peru and Colombia." In exchange for future infrastructure and security contracts, the CTU companies, utilizing PPP and EIDL loan proceeds, recruited, hired, and otherwise materially provided for Colombian mercenaries and others and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.






19. Worldwide Investment Development Group LLC was a company in the State of Florida, incorporated on or about August 13, 2018, with listed addresses located in Weston, Florida, and Miramar, Florida.

20. Worldwide Capital Lending Group Inc. was a company in the State of Florida, incorporated on or about January 1, 2020, with listed addresses located in Weston, Florida, and Miramar, Florida.

21. Worldwide Mortgage Lending Group Inc. was a company in the State of Florida, incorporated on or about October 2, 2019, with listed addresses located in Weston, Florida, and Miramar, Florida.

22. Worldwide Realty Group Services LLC was a company in the State of Florida, incorporated on or about January 26, 2021, with listed addresses located in Weston, Florida, and Miramar, Florida.

23. Ultimate Insurance Group LLC was a company in the State of Florida, incorporated

on or about March 28, 2017, with listed addresses located in Sunrise, Florida, Weston, Florida, and Miramar, Florida.

24. Ultimate Insurance Group I, LLC was a company in the State of Florida, incorporated on or about April 13, 2015, with listed addresses located in Weston, Florida, and Miramar, Florida.

25. "Worldwide Group" refers to the entities listed above in paragraphs 19-24. The Worldwide Group worked with the CTU companies and purported to be "comprised of key professionals and experts in finance, construction, development, sales, and project development and security in the fields of energy, mining, transportation, infrastructure, and real estate construction." In exchange for future Haitian infrastructure and security contracts, the Worldwide Group companies, utilizing PPP and EIDL loan proceeds, recruited, hired, and otherwise materially provided for Colombian mercenaries and others and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.



26. Charis Equity Partners LLC ("Charis Equity") was a company in the State of Florida, incorporated on or about July 24, 2019, with listed addresses located in Fort Lauderdale, Florida.

27. Charis & Arete, LLC ("Charis & Arete") was a company in the State of Florida, incorporated on or about July 23, 2012, with listed addresses located in Fort Lauderdale, Florida.

28. World Scientific Industrial and Medical Inc. ("World Scientific") was a company in the State of Florida, incorporated on or about May 2, 2003, with listed addresses located in Coral Springs, Florida.

29. TNR Holding Group Incorporated ("TNR Holding") was a company in the State of Florida, incorporated on or about March 2, 2020, with listed addresses located in Coral Springs, Florida.

30. Blackberry Fashion Designer LLC ("Blackberry Fashion") was a company in the State of Florida, incorporated on or about February 12, 2018, with listed addresses located in Hollywood, Florida.

31. Bulls Auto Repairs Incorporated ("Bulls Auto") was a company in the State of New York, incorporated on or about February 15, 2006, with listed addresses located in Brooklyn, New York.

32. Dragonzplay Productions Inc. ("Dragonzplay") was a company in the State of Florida, incorporated on or about March 5, 2019, with listed addresses located in Oakland Park, Florida, and Opa Locka, Florida.

33. Agathe Construction Inc. ("Agathe Construction") was a company in the State of Florida, incorporated on or about October 12, 2017, with listed addresses located in Miami, Florida.

34. Next Auto Body LLC ("Next Auto Body") was a company in the State of Florida, incorporated on or about November 16, 2010, with listed addresses located in Hollywood, Florida.

35. Better Health Advocates Inc. a/k/a "Better Home Advocates Inc." ("Better Home Advocates") was a company in the State of Georgia, incorporated on or about February 1, 2018, with listed addresses located in Mableton, Georgia.

## Relevant Individuals

36. **CHRISTIAN EMMANUEL SANON, a/k/a "Kumbe," a/k/a "Pumba," a/k/a "Bubba," a/k/a "Mr. President," a/k/a "P,"** was an individual who resided in Palm Beach County, Florida. **SANON** was a purported pastor and medical doctor that aspired to become the President of Haiti. **SANON** also worked directly with the CTU and Worldwide companies, Colombian mercenaries, and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

37. **BYRON SHERROD RAINER, a/k/a "B. Ellis Rains," a/k/a "Byron Rain," a/k/a "Byron Ellis,"** was an individual who resided in Broward County, Florida. **RAINER** was the listed incorporator for TNR Holding, a silent member of Charis Equity, and operated as a PPP and EIDL broker. **RAINER** also worked directly with the CTU and Worldwide Group companies and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

38. **JOSEPH FELIX BADIO, a/k/a "Cousin,"** was an individual who resided in the State of New York and Haiti. **BADIO** worked directly with the CTU and Worldwide Group companies, Colombian mercenaries, and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **BADIO**, along with the Colombian mercenaries and while posing as a DEA agent, also participated in the assassination of President Moïse.

39. **VITEL'HOMME INNOCENT** was an individual who resided in Haiti. **INNOCENT** was the senior leader of the Kraze Baryé Gang and a member of the Viv Ansanm coalition of Haitian gangs. **INNOCENT** worked directly with the CTU and Worldwide Group companies and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **INNOCENT** also helped conceal and assist the escape of Colombian mercenary MARIO ANTONIO PALACIOS PALACIOS and former Haitian Senator JOSEPH JOEL JOHN after the assassination of President Moïse.

40. **CARLOS GIOVANNI GUERRERO TORRES, a/k/a "Don Francisco,"** was an individual who resided in Colombia. **GUERRERO** was a Colombian mercenary operating at the direction of the CTU and Worldwide Group companies and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **GUERRERO** was also one of the leaders of Colombian mercenaries and participated, while posing as a DEA agent, in the assassination of President Moïse.

41. **VICTOR ALBEIRO PINEDA CARDONA, a/k/a "Pipe,"** was an individual who resided in Colombia. **PINEDA** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **PINEDA**, while posing as a DEA agent, was also a member of the Colombian mercenaries' "Delta Team" that assassinated President Moïse.

42. **JUAN CARLOS YEPES CLAVIJO, a/k/a "Woker,"** was an individual who resided in Colombia. **YEPES** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **YEPES**, while posing as a DEA agent, was

also a member of the Colombian mercenaries' "Delta Team" that assassinated President Moïse.

43. **NAISER FRANCO CASTANEDA, a/k/a "Esneider,"** was an individual who resided in Colombia. **CASTANEDA** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **CASTANEDA**, while posing as a DEA agent, was also a member of the Colombian mercenaries' "Delta Team" that assassinated President Moïse.

44. **ANGEL MARIO YARCE SIERRA** was an individual who resided in Colombia. **YARCE** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **YARCE** also participated, while posing as a DEA agent, in the assassination of President Moïse.

45. **JHEYNER ALBERTO CARMONA FLORES, a/k/a "Joseph,"** was an individual who resided in Colombia. **CARMONA** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **CARMONA** was also one of the leaders of Colombian mercenaries and participated, while posing as a DEA agent, in the assassination of President Moïse.

46. **EDWIN ENRIQUE BLANQUICET RODRIGUEZ, a/k/a "Daniel,"** was an individual who resided in Colombia. **BLANQUICET** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **BLANQUICET** was also one of the leaders of Colombian mercenaries and participated, while posing as a DEA

agent, in the assassination of President Moïse.

47. **MANUEL ANTONIO GROSSO GUARIN, a/k/a "Mauricio,"** was an individual who resided in Colombia. **GROSSO** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **GROSSO** also participated, while posing as a DEA agent, in the assassination of President Moïse.

48. **JHON JAIRO RAMIREZ GOMEZ, a/k/a "Danny,"** was an individual who resided in Colombia. **RAMIREZ** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **RAMIREZ** also participated, while posing as a DEA agent, in the assassination of President Moïse.

49. **FRANCISCO ELADIO URIBE OCHOA, a/k/a "Cristian,"** was an individual who resided in Colombia. **URIBE** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **URIBE** also participated, while posing as a DEA agent, in the assassination of President Moïse.

50. **ALEJANDRO GIRALDO ZAPATA, a/k/a "Alexander,"** was an individual who resided in Colombia. **ZAPATA** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **ZAPATA** also participated, while posing as a DEA agent, in the assassination of President Moïse.

51. **NEIL CACERES DURAN, a/k/a "Anderson,"** was an individual who resided in Colombia. **DURAN** was a Colombian mercenary, operating at the direction of the CTU and

Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **DURAN** also participated, while posing as a DEA agent, in the assassination of President Moïse.

52. **JHON JADER ANDELA** was an individual who resided in Colombia. **ANDELA** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **ANDELA** also participated, while posing as a DEA agent, in the assassination of President Moïse.

53. **ENALBER VARGAS GOMEZ, a/k/a "Victor,"** was an individual who resided in Colombia. **VARGAS** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **VARGAS** also participated, while posing as a DEA agent, in the assassination of President Moïse.

54. **JOHN JAIRO SUAREZ ALEGRIA, a/k/a "Angel,"** was an individual who resided in Colombia. **SUAREZ** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **SUAREZ** also participated, while posing as a DEA agent, in the assassination of President Moïse.

55. **GERSAIN MENDIVELSO JAIMES** was an individual who resided in Colombia. **MENDIVELSO** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **MENDIVELSO** also participated, while posing as a DEA agent, in the assassination of President Moïse.

56. **ALEX MIYER PEÑA, a/k/a "Holman,"** was an individual who resided in Colombia. **PEÑA** was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **PEÑA** also participated, while posing as a DEA agent, in the assassination of President Moïse.

[redacted]

58. **ASHKARD PIERRE** was an individual who resided in Canada and Haiti. **PIERRE** worked directly with the CTU and Worldwide Group companies, the Colombian mercenaries, and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. **PIERRE** also helped conceal and assist the escape of Colombian mercenary MARIO ANTONIO PALACIOS PALACIOS and former Haitian Senator JOSEPH JOEL JOHN after the assassination of President Moïse.

[redacted]

60. **SAMIR HANDAL** was an individual who resided in Miami-Dade County, Florida, and Haiti. **HANDAL** also worked directly with the CTU and Worldwide Group companies, the

Colombian mercenaries, and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

[redacted]

63. **JAMEELA AMMARA SIMMONS** was an individual who resided in Broward County, Florida. **SIMMONS** was the owner, operator, and listed president of Blackberry Fashion. **SIMMONS** also operated as a PPP and EIDL borrower.

64. **MARCEL WILLIAMSON** was an individual who resided in the State of New York. **WILLIAMSON** was the owner, operator, and listed chief executive officer of Bulls Auto. **WILLIAMSON** also operated as a PPP and EIDL borrower.

65. **TRAVIS BARRETT NAVE** was an individual who resided in Broward County, Florida. **NAVE** was the owner, operator, and listed officer/manager for Dragonzplay. **NAVE** also operated as a PPP and EIDL broker and borrower.

66. ARCANGEL PRETEL ORTIZ, a/k/a "Colonel Gabriel," was an individual who resided in Miami-Dade County, Florida. ORTIZ was the owner, operator, and listed

officer/manager for CTU FA. ORTIZ also participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

67. ANTONIO INTRIAGO, a/k/a "Ariel," was an individual who resided in Miami-Dade County, Florida, and the State of Texas. INTRIAGO was the owner, operator, and listed manager for the CTU companies and operated as a PPP and EIDL borrower and broker. INTRIAGO also participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

68. WALTER VEINTEMILLA was an individual who resided in Broward County, Florida. VEINTEMILLA was the owner, operator, and listed officer/manager for the Worldwide Group companies and operated as a PPP and EIDL borrower and broker. VEINTEMILLA also participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

69. JAMES SOLAGES, a/k/a "Yakov," a/k/a "Junior," was an individual who resided in Broward County, Florida. SOLAGES was an employee of the CTU and Worldwide Group companies. SOLAGES also participated, while posing as a DEA agent, in the assassination of President Moïse.

70. JOSEPH JOEL JOHN, a/k/a "J3," a/k/a "Simba," was an individual who resided in Haiti. JOHN was a former Haitian Senator. JOHN worked directly with the CTU and Worldwide Group companies, the Colombian mercenaries, and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. After the assassination of President Moïse, JOHN also escaped to Jamaica, where he was later apprehended by U.S. law enforcement.

71. RODOLPHE JAAR, a/k/a "Midas," a/k/a "Dodof," was an individual who resided

in Haiti. JAAR worked directly with the CTU and Worldwide Group companies, the Colombian mercenaries, and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. After the assassination of President Moïse, JAAR also escaped to the Dominican Republic, where he was apprehended by U.S. law enforcement.

72. GERMAN ALEJANDRO RIVERA GARCIA, a/k/a "Colonel Mike," was an individual who resided in Colombia. RIVERA was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. RIVERA was also one of the leaders of Colombian mercenaries and participated, while posing as a DEA agent, in the assassination of President Moïse.

73. MARIO ANTONIO PALACIOS PALACIOS, a/k/a "Floro," was an individual who resided in Colombia. PALACIOS was a Colombian mercenary, operating at the direction of the CTU and Worldwide Group companies, that participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse. PALACIOS, while posing as a DEA agent, was a member of the Colombian mercenaries' "Delta Team" that assassinated President Moïse. After the assassination of President Moïse PALACIOS also escaped to Jamaica, where he was later apprehended by U.S. law enforcement.

74. JOSEPH VINCENT, a/k/a "Mr. White," a/k/a "Blanco," was an individual who resided in Palm Beach County, Florida. VINCENT also participated, while posing as a DEA agent, in the assassination of President Moïse.

75. JACOB ISRAEL, a/k/a "Gaston H. Orasmy," was an individual who resided in Broward County, Florida. ISRAEL was a listed officer/manager for Charis Equity and Charis &

Arete and operated as a PPP and EIDL borrower and broker. ISRAEL also worked directly with the CTU and Worldwide Group companies and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

76. KEEGAN HARRICHARAN was an individual who resided in Broward County, Florida. HARRICHARAN was a listed officer and director for TNR Holding and World Scientific and operated as a PPP and EIDL borrower and broker. HARRICHARAN also worked directly with the CTU and Worldwide Group companies and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

77. FREDERICK JOSEPH BERGMANN, Jr. was an individual who resided in Hillsborough County, Florida. BERGMANN worked directly with the CTU and Worldwide Group companies and other individuals and participated in a planned coup d'état in Haiti, including the planned killing or kidnapping of President Moïse.

**COUNT 1**
**Conspiracy to Provide Material Support and Resources to Carry Out a Violation of Section 956(a)(1), Resulting in Death**
**(18 U.S.C. § 2339A(a))**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning in or around June 2020, and continuing through on or about July 31, 2021, in the Southern District of Florida and in a place outside the United States, including Haiti, Ecuador, Colombia, and elsewhere, the defendants,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**
**BYRON SHERROD RAINER,**

a/k/a "B. Ellis Rains,"
a/k/a "Byron Rain,"
a/k/a "Byron Ellis,"
**JOSEPH FELIX BADIO,**
a/k/a "Cousin,"
**VITEL'HOMME INNOCENT,**
**CARLOS GIOVANNI GUERRERO TORRES,**
a/k/a "Don Francisco,"
**VICTOR ALBEIRO PINEDA CARDONA,**
a/k/a "Pipe,"
**JUAN CARLOS YEPES CLAVIJO,**
a/k/a "Woker,"
**NAISER FRANCO CASTANEDA,**
a/k/a "Esneider,"
**ANGEL MARIO YARCE SIERRA,**
**JHEYNER ALBERTO CARMONA FLORES,**
a/k/a "Joseph,"
**EDWIN ENRIQUE BLANQUICET RODRIGUEZ,**
a/k/a "Daniel,"
**MANUEL ANTONIO GROSSO GUARIN,**
a/k/a "Mauricio,"
**JHON JAIRO RAMIREZ GOMEZ,**
a/k/a "Danny,"
**FRANCISCO ELADIO URIBE OCHOA,**
a/k/a "Cristian,"
**ALEJANDRO GIRALDO ZAPATA,**
a/k/a "Alexander,"
**NEIL CACERES DURAN,**
a/k/a "Anderson,"
**JHON JADER ANDELA,**
**ENALBER VARGAS GOMEZ,**
a/k/a "Victor,"
**JOHN JAIRO SUAREZ ALEGRIA,**
a/k/a "Angel,"
**GERSAIN MENDIVELSO JAIMES,**
**ALEX MIYER PEÑA,**
a/k/a "Holman,"
[redacted]
**SAMIR HANDAL,**
**ASHKARD PIERRE,**
[redacted]

did knowingly combine, conspire, confederate, and agree with each other and other persons known and unknown to the Grand Jury, to provide, and conceal and disguise the nature, location, source, and ownership of, material support and resources, as defined in Title 18, United States Code, Section 2339A(b)(1)-(3), that is, property, services, financial services, lodging, training, expert advice and assistance, safehouses, false documentation and identification, communications equipment, facilities, weapons, lethal substances, personnel including themselves, and transportation, knowing and intending that they be used in preparation for, in carrying out, and the concealment of an escape from the commission of a violation of Title 18, United States Code, Section 956(a)(1), that is, a conspiracy to kill and kidnap a person outside of the United States.

3. On July 7, 2021, the death of the President of Haiti, Jovenel Moïse, resulted.

All in violation of Title 18, United States Code, Section 2339A(a).

**COUNT 2**
**Providing Material Support and Resources to Carry Out a Violation Resulting in Death**
**(18 U.S.C. § 2339A(a))**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning in or around June 2020, and continuing through on or about July 31, 2021, in the Southern District of Florida and in a place outside the United States, including Haiti, Ecuador, Colombia, and elsewhere, the defendants,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**
**BYRON SHERROD RAINER,**
**a/k/a "B. Ellis Rains,"**
**a/k/a "Byron Rain,"**
**a/k/a "Byron Ellis,"**

**JOSEPH FELIX BADIO,**
**a/k/a "Cousin,"**
**VITEL'HOMME INNOCENT,**
**CARLOS GIOVANNI GUERRERO TORRES,**
**a/k/a "Don Francisco,"**
**VICTOR ALBEIRO PINEDA CARDONA,**
**a/k/a "Pipe,"**
**JUAN CARLOS YEPES CLAVIJO,**
**a/k/a "Woker,"**
**NAISER FRANCO CASTANEDA,**
**a/k/a "Esneider,"**
**ANGEL MARIO YARCE SIERRA,**
**JHEYNER ALBERTO CARMONA FLORES,**
**a/k/a "Joseph,"**
**EDWIN ENRIQUE BLANQUICET RODRIGUEZ,**
**a/k/a "Daniel,"**
**MANUEL ANTONIO GROSSO GUARIN,**
**a/k/a "Mauricio,"**
**JHON JAIRO RAMIREZ GOMEZ,**
**a/k/a "Danny,"**
**FRANCISCO ELADIO URIBE OCHOA,**
**a/k/a "Cristian,"**
**ALEJANDRO GIRALDO ZAPATA,**
**a/k/a "Alexander,"**
**NEIL CACERES DURAN,**
**a/k/a "Anderson,"**
**JHON JADER ANDELA,**
**ENALBER VARGAS GOMEZ,**
**a/k/a "Victor,"**
**JOHN JAIRO SUAREZ ALEGRIA,**
**a/k/a "Angel,"**
**GERSAIN MENDIVELSO JAIMES,**
**ALEX MIYER PEÑA,**
**a/k/a "Holman,"**
[redacted]
**SAMIR HANDAL,**
**ASHKARD PIERRE,**
[redacted]

did provide, and conceal and disguise the nature, location, source, and ownership of, material support and resources, as defined in Title 18, United States Code, Section 2339A(b)(1)-(3), that is,

property, services, financial services, lodging, training, expert advice and assistance, safehouses, false documentation and identification, communications equipment, facilities, weapons, lethal substances, personnel including themselves, and transportation, knowing and intending that they be used in preparation for, in carrying out, and the concealment of an escape from the commission of, a violation of Title 18, United States Code, Section 956(a)(1), that is, a conspiracy to kill and kidnap a person outside of the United States.

3. On July 7, 2021, the death of the President of Haiti, Jovenel Moïse, resulted.

In violation of Title 18, United States Code, Sections 2339A(a) and 2.

**COUNT 3**
**Conspiracy to Kill and Kidnap a Person Outside the United States**
**(18 U.S.C. § 956(a)(1))**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning in or around June 2020, and continuing through on or about July 31, 2021, in the Southern District of Florida and in a place outside the United States, including Haiti, Ecuador, Colombia, and elsewhere, the defendants,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**
**BYRON SHERROD RAINER,**
**a/k/a "B. Ellis Rains,"**
**a/k/a "Byron Rain,"**
**a/k/a "Byron Ellis,"**
**JOSEPH FELIX BADIO,**
**a/k/a "Cousin,"**
**VITEL'HOMME INNOCENT,**
**CARLOS GIOVANNI GUERRERO TORRES,**
**a/k/a "Don Francisco,"**
**VICTOR ALBEIRO PINEDA CARDONA,**

**a/k/a "Pipe,"**
**JUAN CARLOS YEPES CLAVIJO,**
**a/k/a "Woker,"**
**NAISER FRANCO CASTANEDA,**
**a/k/a "Esneider,"**
**ANGEL MARIO YARCE SIERRA,**
**JHEYNER ALBERTO CARMONA FLORES,**
**a/k/a "Joseph,"**
**EDWIN ENRIQUE BLANQUICET RODRIGUEZ,**
**a/k/a "Daniel,"**
**MANUEL ANTONIO GROSSO GUARIN,**
**a/k/a "Mauricio,"**
**JHON JAIRO RAMIREZ GOMEZ,**
**a/k/a "Danny,"**
**FRANCISCO ELADIO URIBE OCHOA,**
**a/k/a "Cristian,"**
**ALEJANDRO GIRALDO ZAPATA,**
**a/k/a "Alexander,"**
**NEIL CACERES DURAN,**
**a/k/a "Anderson,"**
**JHON JADER ANDELA,**
**ENALBER VARGAS GOMEZ,**
**a/k/a "Victor,"**
**JOHN JAIRO SUAREZ ALEGRIA,**
**a/k/a "Angel,"**
**GERSAIN MENDIVELSO JAIMES,**
**ALEX MIYER PEÑA,**
**a/k/a "Holman,"**
[redacted]
**SAMIR HANDAL,**
**ASHKARD PIERRE,**
[redacted]

did knowingly and intentionally combine, conspire, confederate, and agree with each other and other persons known and unknown to the Grand Jury, at least one of whom having been within the jurisdiction of the United States, to commit at a place outside the United States, acts that would constitute murder and kidnapping if these crimes were committed in the special maritime and territorial jurisdiction of the United States, that is, the murder and kidnapping of the President of

Haiti, Jovenel Moïse, and one or more conspirators did commit one or more acts within the jurisdiction of the United States, to effect the purpose and object of the conspiracy, in violation of Title 18, United States Code, Section 956(a)(1).

**COUNT 4**
**Conspiracy to Commit Bank and Wire Fraud**
**(18 U.S.C. § 1349)**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning at least as early as in or around April 2020, through in or around October 2021, the exact dates being unknown to the Grand Jury, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**BYRON SHERROD RAINER,**
**a/k/a "B. Ellis Rains,"**
**a/k/a "Byron Rain,"**
**a/k/a "Byron Ellis,"**
**JAMEELA AMMARA SIMMONS**
**MARCEL WILLIAMSON, and**
**TRAVIS BARRETT NAVE,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to:

(a) knowingly, and with intent to defraud, execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, as defined within Title 18, United States Code, Section 20, which scheme and artifice would employ a material falsehood, and to obtain moneys, funds, credits, and assets owned by, and under the custody and control of a financial

institution, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2);

(b) knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, all which occurred in relation to, and involved any benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster or emergency, and affected one (1) or more financial institutions, in violation of Title 18, United States Code, Section 1343.

**PURPOSE OF THE CONSPIRACY**

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting, and causing to be submitted, false and fraudulent loan applications and other related loan documents under the PPP and EIDL loan programs to the SBA and financial and lending institutions, thereby inducing the SBA and financial and lending institutions to issue PPP and EIDL loans; (b) causing the SBA and financial and lending institutions to loan more money than they otherwise would have loaned by preparing, and submitting, and causing to be prepared and submitted, false and fraudulent loan applications and related documents under PPP and EIDL loan programs; (c) causing the disbursement of money to PPP and EIDL loan borrowers so that the loan proceeds could be transmitted to and used by PPP and EIDL brokers and other co-conspirators in violation of PPP and EIDL loan use requirements; (d) creating and distributing, by wire and other means, false and fraudulent "investment opportunities" in relation to purported real estate and other ventures thereby inducing

PPP and EIDL loan borrowers and other investors to send funds by wire and other means; (e) causing PPP and EIDL loan borrowers and other investors to provide more money than they would have otherwise by falsely and fraudulently promising high-interest returns and profits; (f) providing, and causing to be provided, false and fraudulent information to PPP and EIDL loan borrowers and other investors and concealing that the "investment opportunities" were not profitable to the extent promised and did not exist; and (g) diverting fraud proceeds for their personal use and benefit and to further the fraud scheme and the violations set forth in Counts 1-3 of this Sixth Superseding Indictment.

## MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. **BYRON SHERROD RAINER**, **TRAVIS BARRETT NAVE**, as well as other co-conspirators including JACOB ISRAEL, identified certain individuals, such as **JAMEELA AMMARA SIMMONS**, **MARCEL WILLIAMSON,** and KEEGAN HARRICHARAN, and various businesses, including World Scientific, Charis Equity, Blackberry Fashion, Bulls Auto, Dragonzplay, Agathe Construction, Next Auto Body, and Better Home Advocates, among others, that could be used to defraud the SBA and financial and lending institutions lenders pursuant to PPP and EIDL loan programs.

5. **BYRON SHERROD RAINER, TRAVIS BARRETT NAVE**, JACOB ISRAEL, and other PPP and EIDL brokers prepared, and caused to be prepared, materially false and fraudulent loan applications and other related documents on behalf of the PPP and EIDL borrowers. At times, PPP and EIDL borrowers prepared, and caused to be prepared, their own materially false and fraudulent loan applications and other related documents. The PPP and EIDL

loan applications contained materially false and fraudulent representations as to applicants' employees, payroll, tax return and bank account information, intent to only use loan proceeds as dictated by EIDL and PPP loan requirements, and other information necessary for the SBA and financial and lending institutions to assess the applicants' purported qualifications to borrow funds. The materially false and fraudulent applications, documents, and information were used to induce SBA and financial and lending institutions to fund the PPP and EIDL loans.

6. The SBA and financial and lending institutions approved the PPP and EIDL applications based on the materially false and fraudulent loan applications, documents, and information submitted. Once the applications were approved, the SBA and financial and lending institutions would wire the loan proceeds to PPP and EIDL borrowers such as **JAMEELA AMMARA SIMMONS, MARCEL WILLIAMSON, TRAVIS BARRETT NAVE,** KEEGAN HARRICHARAN, and others.

7. On or about April 15, 2020, **TRAVIS BARRETT NAVE** electronically applied for a PPP loan for Dragonzplay. On the PPP loan application, **NAVE** falsely and fraudulently claimed 12 employees and $36,000 in monthly payroll and affirmed that he would comply with the PPP program's use and spending rules. Based on these material misrepresentations, the SBA and Financial Institution-1 approved the PPP loan. On June 5, 2020, **NAVE** received, via interstate wire transfer, approximately $90,000 in PPP loan proceeds from Financial Institution-1, which he utilized in violation of PPP program use and spending rules and to further the fraud scheme.

8. On or about June 8, 2020, **TRAVIS BARRETT NAVE** and JACOB ISRAEL caused Agathe Construction to electronically apply for a PPP loan. On the PPP loan application, Agathe Construction falsely and fraudulently claimed 51 employees and $317,715 in monthly payroll and affirmed that it would comply with the PPP program's use and spending rules. Based

on these material misrepresentations, the SBA and Financial Institution-2 approved the PPP loan. On June 11, 2020, Agathe Construction received, via interstate wire transfer, approximately $794,287 in PPP loan proceeds from Financial Institution-2. That same day, **NAVE** was paid $158,000 – via cashier's check – by Agathe Construction for falsely and fraudulently facilitating and obtaining the PPP loan, all in violation of PPP program use and spending rules and to further the fraud scheme.

9. On or about June 17, 2020, **TRAVIS BARRETT NAVE** and JACOB ISRAEL caused KEEGAN HARRICHARAN's company World Scientific to electronically apply for a PPP loan. On the PPP loan application, World Scientific falsely and fraudulently claimed 53 employees and $336,331 in monthly payroll and affirmed that it would comply with the PPP program's use and spending rules. Based on these material misrepresentations, the SBA and Financial Institution-2 approved the PPP loan. On or about June 17, 2020, HARRICHARAN received, via interstate wire transfer, approximately $840,827 in PPP loan proceeds from Financial Institution-2. On or about June 18, 2020, HARRICHARAN fraudulently utilized these PPP loan proceeds to obtain two (2) cashier's checks, each in the amount of $126,124, as kickback payments to **NAVE**, ISRAEL, and another individual, all in violation of PPP program use and spending rules and to further the fraud scheme.

10. On or about June 17, 2020, **TRAVIS BARRETT NAVE** and JACOB ISRAEL caused Next Auto Body to electronically apply for a PPP loan. On the PPP loan application, Next Auto Body falsely and fraudulently claimed 48 employees and $320,500 in monthly payroll and affirmed that it would comply with the PPP program's use and spending rules. Based on these material misrepresentations, the SBA and Financial Institution-2 approved the PPP loan. On or about June 17, 2020, Next Auto Body received, via interstate wire transfer, approximately

$801,250 in PPP loan proceeds from Financial Institution-2. On or about June 18, 2020, **NAVE** was paid $80,000 – via cashier's check – by Next Auto Body for falsely and fraudulently facilitating and obtaining the PPP loan, all in violation of PPP program use and spending rules and to further the fraud scheme.

11. On or about June 24, 2020, **MARCEL WILLIAMSON** caused Bulls Auto to electronically apply for an EIDL loan. On the EIDL loan application, **WILLIAMSON** affirmed that he would comply with the EIDL program's use and spending rules. Based on these material misrepresentations, the SBA approved the EIDL loan. Beginning on or about June 29, 2020, and continuing through on or about May 27, 2021, **WILLIAMSON** received, via interstate wire transfer, approximately $220,000 in EIDL proceeds from the SBA, which he subsequently utilized for his own use and benefit, all in violation of EIDL program use and spending rules, and to further the fraud scheme.

12. On or about June 28, 2020, **TRAVIS BARRETT NAVE** and JACOB ISRAEL caused Better Home Advocates to electronically apply for a PPP loan. On the PPP loan application, Better Home Advocates falsely and fraudulently claimed 65 employees and $253,522 in monthly payroll. In fact, as **NAVE** and ISRAEL well knew, Better Home Advocates did not have 65 employees or expend $253,522 in monthly payroll. Based on the material misrepresentations, the SBA and Lending Institution-1 approved the PPP loan. On or about July 1, 2020, Better Home Advocates received, via interstate wire transfer, approximately $633,803 in PPP loan proceeds from Lending Institution-1. That same day, **NAVE** was paid $300,000– via cashier's check – by Better Home Advocates for falsely and fraudulently facilitating and obtaining

the PPP loan, all in violation of PPP program use and spending rules and to further the fraud scheme.

13. On or about July 22, 2020, **JAMEELA AMMARA SIMMONS** electronically applied for a PPP loan for Blackberry Fashion. On the PPP loan application, **SIMMONS** falsely and fraudulently claimed 21 employees and $112,559 in monthly payroll and affirmed that she would comply with the PPP program's use and spending rules. Based on these material misrepresentations, the SBA and Financial Institution-3 approved the PPP loan. On or about July 22, 2020, **SIMMONS** received, via interstate wire transfer, approximately $281,397 in PPP loan proceeds from Financial Institution-3, which she subsequently utilized for her own use and benefit, all in violation of PPP program use and spending rules, and to further the fraud scheme.

14. On or about March 15, 2021, **JAMEELA AMMARA SIMMONS** electronically applied for another PPP loan for Blackberry Fashion. On the PPP loan application, **SIMMONS** falsely and fraudulently claimed 21 employees and $113,736 in monthly payroll and affirmed that she would comply with the PPP program's use and spending rules. Based on these material misrepresentations, the SBA and Lending Institution-2 approved the PPP loan. On or about March 16, 2021, **SIMMONS** received, via interstate wire transfer, approximately $284,340 in PPP loan proceeds from Lending Institution-2, which she subsequently utilized for her own use and benefit, all in violation of PPP program use and spending rules, and to further the fraud scheme.

15. **BYRON SHERROD RAINER** and JACOB ISRAEL also recruited individuals that had already received PPP and EIDL loans, and possessed other funds, and falsely and fraudulently offered, via wire and other means, to invest their PPP and EIDL loan proceeds and other funds in purported real estate and other ventures that, in fact, did not exist. Based on these materially false and fraudulent misrepresentations, the individuals wired and provided funds to

**RAINER**, ISRAEL, KEEGAN HARRICHARAN, WALTER VEINTEMILLA, and the CTU and Worldwide Group companies. Among the individuals recruited were the owners of Delcarpio Construction LLC, Individual-1, and PPP and EIDL borrowers **JAMEELA AMMARA SIMMONS** and **MARCEL WILLIAMSON**.

16. On May 19, 2021, Individual-1 wired approximately $50,000 to JACOB ISRAEL and WALTER VEINTEMILLA. Beginning on or about May 17, 2021, and continuing through on or about June 9, 2021, **MARCEL WILLIAMSON** wired approximately $132,500, which contained a substantial portion of his EIDL loan proceeds, to **BYRON SHERROD RAINER**, VEINTEMILLA, and KEEGAN HARRICHARAN. On or about May 28, 2021, **JAMEELA AMMARA SIMMONS** wired approximately $150,000 in PPP loan proceeds to **RAINER** and HARRICHARAN. Beginning on or about September 29, 2021, and continuing through on or about October 29, 2021, the owners of Delcarpio Construction LLC wired approximately $175,000 to **RAINER** and HARRICHARAN. In turn, **RAINER**, VEINTEMILLA, ISRAEL, and HARRICHARAN caused these PPP and EIDL loan proceeds and other investor funds to be provided to, and on behalf of, the CTU and Worldwide Group companies and to further the fraud scheme and the violations set forth in Counts 1-3 of this Sixth Superseding Indictment.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 5
## Conspiracy to Commit Money Laundering
## (18 U.S.C. § 1956(h))

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning at least as early as in or around April 2020, and continuing through in or around October 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**BYRON SHERROD RAINER,**
**a/k/a "B. Ellis Rains,"**
**a/k/a "Byron Rain,"**
**a/k/a "Byron Ellis,"**

did knowingly and voluntarily combine, conspire, confederate and agree with other persons known and unknown to the Grand Jury to commit certain offenses against the United States, in violation of Title 18, United States Code, Section 1956, that is:

(a) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity and with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is: wire and bank fraud, in violation of Title 18, United States Code, Sections 1343 and 1344, as provided by Title 18, United States Code, Section 1956(c)(7)(A); conspiracy to provide material support and resources to a conspiracy to kidnap or kill a person outside the United States resulting in death; in violation of Title 18,

United States Code, Sections 956 and 2339A(a), as provided by Title 18, United States Code, Section 1956(c)(7)(D); and conspiracy to kidnap or kill a person outside the United States resulting in death, in violation of Title 18, United States Code, Section 956, as provided by Title 18, United States Code, Section 1956(c)(7)(D).

All in violation of Title 18, United States Code, Section 1956(h).

**COUNT 6**
**Conspiracy to Commit Offenses Against the United States**
**(18 U.S.C. § 371)**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning in or around February of 2021, and continuing through on or about July 31, 2021, in the Southern District of Florida and in a place outside the United States, including Haiti and elsewhere, the defendant,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit any offense against the United States, that is, to knowingly begin and set on foot, and provide and prepare a means for, and furnish the money for, and take part in, a military expedition and enterprise to be carried on from the United States against the territory and dominion of a foreign state, namely the country of Haiti, with which the United States is at peace, in violation of Title 18, United States Code, Section 960.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object thereof, the defendant and others committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

3. On or about April 4, 2021, JOSEPH JOEL JOHN travelled from Haiti to the Southern District of Florida to meet with coconspirators, including **CHRISTIAN EMMANUEL SANON**, **BYRON SHERROD RAINER**, ARCANGEL PRETEL ORTIZ, ANTONIO INTRIAGO, WALTER VEINTEMILLA, JAMES SOLAGES, and others.

4. On or about April 30, 2021, Worldwide Capital Lending Group ("Worldwide"), whose principal was WALTER VEINTEMILLA, provided CTU with a $175,000 line of credit to finance CTU's support of **CHRISTIAN EMMANUEL SANON**, which transaction was executed by ANTONIO INTRIAGO and VEINTEMILLA, with ARCANGEL PRETEL ORTIZ signing as a witness.

5. On or about May 17, 2021, **CHRISTIAN EMMANUEL SANON** signed a "Consultant Agreement" with CTU. Pursuant to the agreement, CTU would provide **SANON** with, among other things, ballistic vests for his "private military" forces in Haiti.

6. On or about May 21, 2021, **CHRISTIAN EMMANUEL SANON** and ANTONIO INTRIAGO transported a small number of the ballistic vests aboard a private flight from the Southern District of Florida to Haiti.

7. On or about June 2, 2021, WALTER VEINTEMILLA, as principal of Worldwide, paid $9,145.00 to fund the travel of approximately 18 Colombian nationals with military training to Haiti.

8. On or about June 3, 2021, WALTER VEINTEMILLA, as principal of Worldwide, wired $15,000 to JAMES SOLAGES to fund the co-conspirators' acquisition of ammunition.

9. On or about June 10, 2021, **CHRISTIAN EMMANUEL SANON**, ANTONIO INTRIAGO, and FREDERICK JOSEPH BERGMANN, Jr. caused a shipping company to export CTU's ballistic vests from the Southern District of Florida to Haiti.

10. On or about June 28, 2021, JAMES SOLAGES flew from Haiti to the Southern District of Florida to deliver a purported Haitian immunity agreement to ARCANGEL PRETEL ORTIZ, ANTONIO INTRIAGO, and WALTER VEINTEMILLA.

11. On or about July 1, 2021, JAMES SOLAGES returned to Haiti to participate in the operation against President Moïse.

12. On or about July 7, 2021, JAMES SOLAGES, JOSEPH VINCENT, GERMAN ALEJANDRO RIVERA GARCIA, MARIO ANTONIO PALACIOS PALACIOS, and other conspirators travelled in a convoy of vehicles to President Moïse's residence to conduct the operation against President Moïse.

All in violation of Title 18, United States Code, Section 371.

**COUNT 7**
**Expedition Against Friendly Nation**
**(18 U.S.C. § 960)**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning in or around February of 2021, and continuing through on or about July 31, 2021, in the Southern District of Florida and in a place outside the United States, including Haiti and elsewhere, the defendant,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**

knowingly began and set on foot, and provided and prepared a means for, and furnished the money for, and took part in, a military expedition and enterprise to be carried on from the United States against the territory and dominion of a foreign state, namely the country of Haiti, with which the United States is at peace, in violation of Title 18, United States Code, Sections 960 and 2.

**COUNT 8**
**Conspiracy to Commit Offenses Against the United States**
**(18 U.S.C. § 371)**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. Beginning in or around February of 2021, and continuing through on or about June 10, 2021, in the Southern District of Florida and in a place outside the United States, including Haiti and elsewhere, the defendant,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit any offense against the United States, that is:

(a) fraudulently and knowingly export and send from the United States to Haiti merchandise, articles, and objects, that is, ballistic vests, contrary to laws and regulations of the United States, that is, Title 13, United States Code, Section 305 and Title 15, Code of Federal Regulations, Part 30, and receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be

intended for exportation contrary to such laws and regulations of the United States, in violation of Title 18, United States Code, Section 554; and

(b) knowingly fail to file export information and knowingly submit false and misleading export information through the Automated Export System in connection with the export of the ballistic vests, in violation of Title 13, United States Code, Section 305.

**OVERT ACTS**

In furtherance of the conspiracy and to achieve the object thereof, the defendant and others committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

3. On or about May 17, 2021, **CHRISTIAN EMMANUEL SANON** signed a "Consultant Agreement" with CTU. Pursuant to the agreement, CTU would provide **SANON** with, among other things, ballistic vests for his "private military" forces in Haiti.

4. On or about May 21, 2021, **CHRISTIAN EMMANUEL SANON** and ANTONIO INTRIAGO transported a small number of the ballistic vests aboard a private flight from Florida to Haiti.

5. On or about June 8, 2021, FREDERICK JOSEPH BERGMANN, Jr. and ANTONIO INTRIAGO exchanged messages regarding shipping the ballistic vests from Florida to Haiti, during which INTRIAGO advised BERGMANN that BERGMANN could "send the vest [sic] as paintball protection vest [sic]," and BERGMANN responded: "I don't think they'll have a problem having my research company ship x-ray protective vests."

6. On or about June 8, 2021, FREDERICK JOSEPH BERGMANN, Jr. arranged for a shipping company in Florida to export the ballistic vests to Haiti. BERGMANN falsely represented to the shipping company that the goods to be shipped were "medical x-ray vests" with a total value of approximately $1,000.

7. On or about June 9, 2021, FREDERICK JOSEPH BERGMANN, Jr. signed a commercial invoice, dated June 10, 2021, for the export of the ballistic vests to Haiti, which falsely described the goods being shipped as "medical x-ray vests" with a total value of approximately $1,000.

8. On or about June 9, 2021, FREDERICK JOSEPH BERGMANN, Jr. signed a shipper's letter of instruction, dated June 10, 2021, for the export of the ballistic vests to Haiti, which falsely described the goods being shipped as "medical x-ray vests."

8. On or about June 9, 2021, FREDERICK JOSEPH BERGMANN, Jr. sent to **CHRISTIAN EMMANUEL SANON** the commercial invoice that falsely described the ballistic vests as "medical x-ray vests."

9. On or about June 9, 2021, FREDERICK JOSEPH BERGMANN, Jr. sent to **CHRISTIAN EMMANUEL SANON** the shipper's letter of instruction that falsely described the ballistic vests as "medical x-ray vests."

10. On or about June 9, 2021, FREDERICK JOSEPH BERGMANN, Jr. sent a message to **CHRISTIAN EMMANUEL SANON** and ANTONIO INTRIAGO, asking INTRIAGO to deliver the ballistic vests and copies of the commercial invoice to the shipping company the following morning.

11. On or about June 9, 2021, FREDERICK JOSEPH BERGMANN, Jr. sent a message to **CHRISTIAN EMMANUEL SANON** and ANTONIO INTRIAGO, informing **SANON** that the shipment would arrive in Haiti the following afternoon and ensuring that **SANON** would manage the coordination of the ultimate delivery of the ballistic vests to the Colombian nationals providing security to **SANON**.

12. On or about June 9, 2021, **CHRISTIAN EMMANUEL SANON** sent a message to FREDERICK JOSEPH BERGMANN, Jr. confirming the plans to receive and deliver the ballistic vests in Haiti.

13. On or about June 10, 2021, ANTONIO INTRIAGO delivered the ballistic vests to the shipping company in Florida.

14. On or about June 10, 2021, **CHRISTIAN EMMANUEL SANON,** FREDERICK JOSEPH BERGMANN, Jr., and their co-conspirators caused the shipping company to export the ballistic vests from the Southern District of Florida to Haiti.

15. On or about June 10, 2021, **CHRISTIAN EMMANUEL SANON** provided the shipping paperwork that falsely described the ballistic vests as "medical x-ray vests" to the individual in Haiti handling the Haitian customs process.

16. On or about June 10, 2021, **CHRISTIAN EMMANUEL SANON** coordinated the delivery of the ballistic vests to the Colombian nationals in Haiti.

All in violation of Title 18, United States Code, Section 371.

**COUNT 9**
**Smuggling Goods from the United States**
**(18 U.S.C. § 554)**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. On or about June 10, 2021, in Miami-Dade County, in the Southern District of Florida, Haiti and elsewhere, the defendant,

**CHRISTIAN EMMANUEL SANON,**
**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**

fraudulently and knowingly exported and sent from the United States to a place outside thereof, that is, Haiti, any merchandise, articles, and objects, that is, ballistic vests, contrary to laws and regulations of the United States, that is, Title 13, United States Code, Section 305 and Title 15, Code of Federal Regulations, Part 30, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation, contrary to any law and regulation of the United States, in violation of Title 18, United States Code, Sections 554 and 2.

**COUNT 10**
**Submitting False or Misleading Export Information**
**(13 U.S.C. § 305)**

1. Paragraphs 1-77 of the General Allegations section of this Sixth Superseding Indictment are re-alleged and incorporated fully herein by reference.

2. On or about June 10, 2021, in Miami-Dade County, in the Southern District of Florida, Haiti and elsewhere, the defendant,

**CHRISTIAN EMMANUEL SANON,**

**a/k/a "Kumbe,"**
**a/k/a "Pumba,"**
**a/k/a "Bubba,"**
**a/k/a "Mr. President,"**
**a/k/a "P,"**

knowingly failed to file export information and knowingly submitted false and misleading export information through the Automated Export System in connection with the export of ballistic vests from the United States to Haiti, in violation of Title 13, United States Code, Section 305, Title 13, Code of Federal Regulations, Section 30.71, and Title 18, United States Code, Section 2.

**FORFEITURE ALLEGATIONS**

1. The allegations of this Sixth Superseding Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which defendants **CHRISTIAN EMMANUEL SANON, a/k/a "Kumbe," a/k/a "Pumba," a/k/a "Bubba," a/k/a "Mr. President," a/k/a "P," BYRON SHERROD RAINER, a/k/a "B. Ellis Rains," a/k/a "Byron Rain," a/k/a "Byron Ellis," JOSEPH FELIX BADIO, a/k/a "Cousin," VITEL'HOMME INNOCENT, CARLOS GIOVANNI GUERRERO TORRES, a/k/a "Don Francisco," VICTOR ALBEIRO PINEDA CARDONA, a/k/a "Pipe," JUAN CARLOS YEPES CLAVIJO, a/k/a "Woker," NAISER FRANCO CASTANEDA a/k/a "Esneider," ANGEL MARIO YARCE SIERRA, JHEYNER ALBERTO CARMONA FLORES, a/k/a "Joseph," EDWIN ENRIQUE BLANQUICET RODRIGUEZ, a/k/a "Daniel," MANUEL ANTONIO GROSSO GUARIN, a/k/a "Mauricio," JHON JAIRO RAMIREZ GOMEZ, a/k/a "Danny," FRANCISCO ELADIO URIBE OCHOA, a/k/a "Cristian," ALEJANDRO GIRALDO ZAPATA, a/k/a "Alexander," NEIL CACERES DURAN, a/k/a "Anderson," JHON JADER ANDELA, ENALBER VARGAS GOMEZ, a/k/a "Victor," JOHN JAIRO SUAREZ ALEGRIA, a/k/a "Angel,"**

**GERSAIN MENDIVELSO JAIMES, ALEX MIYER PEÑA, a/k/a "Holman,"** [redacted] **SAMIR HANDAL, ASHKARD PIERRE,** [redacted] **JAMEELA AMMARA SIMMONS, MARCEL WILLIAMSON,** and **TRAVIS BARRETT NAVE** (hereinafter "the defendants"), have an interest.

2. Upon conviction of any violation of Title 18, United States Code, Sections 2339A(a) or 956(a)(1) as alleged in this Sixth Superseding Indictment in Counts 1, 2, and 3, the defendants shall forfeit to the United States all assets, foreign or domestic:

a. of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

b. acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property;

c. derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property; or

d. of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism (as defined in section 2331) against any international organization (as defined in section 209 of the State Department Basic Authorities

Act of 1956 (22 U.S.C. § 4309(b)) or against any foreign Government, pursuant to Title 18 United States Code, Section 981(a)(1)(G).

3. Upon conviction of any violation of Title 18, United States Code, Section 1349, as alleged in this Sixth Superseding Indictment Count 4, defendants **BYRON SHERROD RAINER, a/k/a "B. Ellis Rains," a/k/a "Byron Rain," a/k/a "Byron Ellis," JAMEELA AMMARA SIMMONS, MARCEL WILLIAMSON,** and **TRAVIS BARRETT NAVE** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

4. Upon conviction of any violation of Title 18, United States Code, Section 1956, as alleged in this Sixth Superseding Indictment Count 5, defendant **BYRON SHERROD RAINER, a/k/a "B. Ellis Rains," a/k/a "Byron Rain," a/k/a "Byron Ellis,"** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

5. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

6. Upon conviction of any violation of Title 50, United States Code, Section 4819, as alleged in this Sixth Superseding Indictment in Count 6, defendant **CHRISTIAN EMMANUEL SANON, a/k/a "Kumbe," a/k/a "Pumba," a/k/a "Bubba," a/k/a "Mr. President," a/k/a "P,"** shall forfeit to the United States any property:

a. used or intended to be used, in any manner, to commit or facilitate the offense;

b. constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the offense; or

c. constituting an item or technology that is exported or intended to be exported in violation of Title 50, Chapter 58, Subchapter I,

pursuant to Title 50, United States Code, Section 4819(d).

7. Upon conviction of any violation of, or a conspiracy to violate, Title 18, United States Code, Section 554, as alleged in this Sixth Superseding Indictment in Count 9, defendant **CHRISTIAN EMMANUEL SANON, a/k/a "Kumbe," a/k/a "Pumba," a/k/a "Bubba," a/k/a "Mr. President," a/k/a "P,"** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

8. Upon conviction of any violation of, or conspiracy to violate, Title 13, United States Code, Section 305, as alleged in this Sixth Superseding Indictment in Count 10, defendant **CHRISTIAN EMMANUEL SANON, a/k/a "Kumbe," a/k/a "Pumba," a/k/a "Bubba," a/k/a "Mr. President," a/k/a "P,"** shall forfeit to the United States:

a. any of that person's interest in, security of, claim against, or property or contractual rights of any kind in the goods or tangible items that were the subject of the offense;

b. any of that person's interest in, security of, claim against, or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of the offense; and

c. any of that person's property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the offense,

pursuant to Title 13, United States Code, Section 305(a)(3).

[REMAINDER OF THE PAGE IS INTENTIONALLY LEFT BLANK.]

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 981(a)(1)(G), Title 50, United States Code, Section 4819, and/or Title 13, United States Code, Section 305(a)(3), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA** | **CASE NO.** 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

**v.**
CHRISTIAN EMMANUEL SANON,
a/k/a "Kumbe," "Pumba," "Bubba,"
"Mr. President,"and "P,"et al.,
Defendants. /

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) Yes
Number of New Defendants 29
Total Number of New Counts 2

**Court Division** (select one)
☒ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish AND Creole
4. This case will take 70 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

| **(Check only one)** | | **(Check only one)** |
|---|---|---|
| I | ☐ 0 to 5 days | ☐ Petty |
| II | ☐ 6 to 10 days | ☐ Minor |
| III | ☐ 11 to 20 days | ☐ Misdemeanor |
| IV | ☐ 21 to 60 days | ☒ Felony |
| V | ☒ 61 days and over | |

6. Has this case been previously filed in this District Court? (Yes or No) Yes
   If yes, Judge Jacqueline Becerra Case No. 22-CR-20104-JB(s)(s)(s)(s)(s)
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge ______ Magistrate Case No. ______
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge ______ Case No. ______
9. Defendant(s) in federal custody as of Christian Sanon only 01/31/2023
10. Defendant(s) in state custody as of ______
11. Rule 20 from the ______ District of ______
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

By: ______
SEAN T. MCLAUGHLIN
Assistant United States Attorney
SDFL Court ID No. A5501121

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **CHRISTIAN EMMANUEL SANON, a/k/a "Kumbe," "Pumba," "Bubba," "Mr. President," and "P"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**Defendant's Name**: **CHRISTIAN EMMANUEL SANON, a/k/a “Kumbe,” “Pumba,” “Bubba,” “Mr. President,” and “P”**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Counts #: 6 and 8

Conspiracy to Commit Offenses Against the United States

Title 18, United States Code, Section 371
*** Max. Term of Imprisonment: 5 Years’ Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 3 Years**
*** Max. Fine: $250,000.00**

Count #: 7

Expedition Against Friendly Nation

Title 18, United States Code, Section 960
*** Max. Term of Imprisonment: 3 Years’ Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 1 Year**
*** Max. Fine: $250,000.00**

Count #: 9

Smuggling Goods from the United States

Title 18, United States Code, Section 554
*** Max. Term of Imprisonment: 10 Years’ Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 3 Years**
*** Max. Fine: $250,000.00**

Count #: 10

Submitting False or Misleading Export Information

Title 13, United States Code, Section 305
*** Max. Term of Imprisonment: 5 Years’ Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 3 years**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **BYRON SHERROD RAINER, a/k/a "B. Ellis Rains," "Byron Rain," and "Byron Ellis"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**Defendant's Name**: **BYRON SHERROD RAINER, a/k/a "B. Ellis Rains," "Byron Rain," and "Byron Ellis"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 4

Conspiracy to Commit Bank and Wire Fraud

Title 18, United States Code, Section 1349

*** Max. Term of Imprisonment: 20 Years' Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 5 years**
*** Max. Fine: $550,000.00 (or double unlawful proceeds)**

Count #: 5

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

*** Max. Term of Imprisonment: 20 Years' Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 5 years**
*** Max. Fine: $550,000.00 (or double unlawful proceeds)**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **JOSEPH FELIX BADIO, a/k/a "Cousin"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **VITEL'HOMME INNOCENT**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **CARLOS GIOVANNI GUERRERO TORRES, a/k/a "Don Francisco"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **VICTOR ALBEIRO PINEDA CARDONA, a/k/a "Pipe"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **JUAN CARLOS YEPES CLAVIJO, a/k/a "Woker"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **NAISER FRANCO CASTANEDA, a/k/a "Esneider"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **ANGEL MARIO YARCE SIERRA**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **JHEYNER ALBERTO CARMONA FLORES, a/k/a "Joseph"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **EDWIN ENRIQUE BLANQUICET RODRIGUEZ, a/k/a "Daniel"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **MANUEL ANTONIO GROSSO GUARIN, a/k/a "Mauricio"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **JHON JAIRO RAMIREZ GOMEZ, a/k/a "Danny"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **FRANCISCO ELADIO URIBE OCHOA, a/k/a "Cristian"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)

*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)

*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)

*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **ALEJANDRO GIRALDO ZAPATA, a/k/a "Alexander"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **NEIL CACERES DURAN, a/k/a "Anderson"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **JHON JADER ANDELA**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **ENALBER VARGAS GOMEZ, a/k/a "Victor"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **JOHN JAIRO SUAREZ ALEGRIA, a/k/a "Angel"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **GERSAIN MENDIVELSO JAIMES**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name: ALEX MIYER PEÑA, a/k/a "Holman"**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: [redacted]

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **SAMIR HANDAL**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name: ASHKARD PIERRE**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: [redacted]

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: [redacted]

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: [redacted]

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 1

Conspiracy to Provide Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 2

Providing Material Support or Resources to Carry out a Violation of Section 956, Resulting in Death

Title 18, United States Code, Section 2339A(a)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

Count #: 3

Conspiracy to Kill or Kidnap a person outside the United States

Title 18, United States Code, Section 956(a)(1)
*** Max. Term of Imprisonment: Life Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Life**
*** Max. Fine: $250,000.00**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name: JAMEELA AMMARA SIMMONS**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 4

Conspiracy to Commit Bank and Wire Fraud

Title 18, United States Code, Section 1349

*** Max. Term of Imprisonment: 20 Years' Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 5 years**
*** Max. Fine: $550,000.00 (or double unlawful proceeds)**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name: MARCEL WILLIAMSON**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 4

Conspiracy to Commit Bank and Wire Fraud

Title 18, United States Code, Section 1349

*** Max. Term of Imprisonment: 20 Years' Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 5 years**
*** Max. Fine: $550,000.00 (or double unlawful proceeds)**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **TRAVIS BARRETT NAVE**

**Case No**: 22-CR-20104-JB(s)(s)(s)(s)(s)(s)

Count #: 4

Conspiracy to Commit Bank and Wire Fraud

Title 18, United States Code, Section 1349

*** Max. Term of Imprisonment: 20 Years' Imprisonment**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 5 years**
*** Max. Fine: $550,000.00 (or double unlawful proceeds)**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**